19528

Carl SELLERS et al., Appellants-Respondents, v. STATE of South Carolina, Respondent-Appellant.

(193 S. E. (2d) 513)

*Messrs. Francis T. Draine and D. Cravens Ravenel,* of Columbia, *for Appellants-Respondents,*

*Messrs. Daniel R. McLeod, Atty. Gen., Emmett H. Clair and Robert M. Ariail, Asst. Attys. Gen.,* of Columbia, *for Respondent-Appellant,*

December 5, 1972.

LEWIS, Justice:

Appellants are inmates of the Central Corrections Institution, located in Columbia, South Carolina, and were discipilined by the prison officials for alleged assault and "rape" of other inmates. The punishment imposed by the prison authorities for such misconduct was: (1) loss of good conduct credit (Section 55-8, 1962 Code of Laws), and (2) indefinite segregation in the maximum security section of the Central Correctional Institution. Thereafter, appellants instituted this action seeking to have the disciplinary action taken against them set aside upon the ground that the procedures under which the foregoing penalties were imposed failed to meet the standards of due process.

After an evidentiary hearing, the lower court held that the action of the prison authorities in depriving appellants of good time credit was taken without according them procedural due process, but that the procedural protection afforded was sufficient to sustain the imposition of the penalty of administrative segregation in the exercise of the powers of the prison officials to maintan order, discipline and security among the prison population. The imposition of the penalty of loss of good time credit was accordingly set aside and that of administrative segregation upheld.

Appeal by the State (respondent) from so much of the order of the lower court as restores appellants' good time credit has been abandoned. We are here concerned only with appellants' challenge of that portion of the order upholding the imposition of the penalty of administrative segregation.

The disciplinary action against appellants arose out of complaints made by several prisoners that they had been beaten and sexually assaulted by other inmates. As the result of these complaints, the Warden, with the help of other prison officers, made an investigation and secured statements from some of the alleged victims implicating the appellants. The inmates who gave statements feared for their lives if

their identity was disclosed and the Warden, agreeing that their fears were well founded, promised that the names of those giving information would be kept secret. The names of these inmates were accordingly never disclosed to appellants.

When the investigation developed information pointing to the guilt of appellants, they were, on September 23, 1971, placed in confinement separate from the remaining prison population. On October 6, 1971, they were informed of the charges against them and two days later were given a hearing before the prison Adjustment Committee, a committee of prison officials charged with the duty of initially hearing serious charges of violations of prison rules. This hearing resulted in the imposition of the penalty in question.

Appellants now contend that they were denied due process in that they (1) were not informed of their right to remain silent; (2) were not accorded the right to council; (3) were denied the right to confront the witnesses against them; (4) were not given the right to call witnesses in their behalf; (5) were not given adequate notice of the charges or sufficient time to prepare a defense; and (6) were denied the right to a fair hearing before an impartial tribunal.

The disciplinary action in this case involved the good faith exercise of the discretionary power of the prison officials in the maintenance of order, discipline, and security among the prison population and, as such, is not subject to judicial review. The administrative authorities of the prison were faced with a situation where inmates were being subjected to beatings and sexual assaults from other inmates. Prompt, effective action on the part of the officials was mandatory. Those guilty of the assaults could not be apprehended and punished except upon the testimony of other prison inmates and cooperation from that source was obtainable only upon a promise to protect the personal security of the informers by not divulging their identity. It was under these circumstances that the determinations were made which prompted the disciplinary action against appellants.

In the subsequent determination by the prison officials, there is no proof that they acted arbitrarily, capriciously or from personal bias or prejudice. The evidence shows that the determination was made in good faith and concerned routine disciplinary action in prison administration. Such actions of prison officials are not subject to judicial review.

The judgement of the lower court is accordingly affirmed.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.